UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TERESA RICHARDSON,

                        Plaintiff,

      v.

IBEW PACIFIC COAST PENSION
FUND,

                    Defendant.

CASE NO. C19-0772JLR

ORDER REGARDING
DEFENDANT'S MOTION TO
DISMISS OR FOR SUMMARY
JUDGMENT AND THE
PARTIES' TRIAL BRIEFS

## I.   INTRODUCTION

Plaintiff Teresa Richardson brings an action under the Employee Retirement

Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, against Defendant

IBEW Pacific Coast Pension Fund ("IBEW" or "the Plan") related to IBEW's reduction

in her monthly pension benefit amount and IBEW's attempt to recoup its alleged

overpayment to Ms. Richardson.  (*See generally* Compl. (Dkt. # 1).)  Essentially, Ms.

Richardson is appealing IBEW's decision to reduce her monthly pension benefit and to

demand restitution of its overpayment to her.  (*See id.* ¶ 2.12 ("[Ms.] Richardson appealed . . . IBEW['s] . . . re-calculation of her pension benefits, but to no avail.  [Ms. Richardson] has now exhausted all administrative appeal options through the Plan, [and] thus has standing to bring this action under ERISA Section 502(a)[, 29 U.S.C. § 1132(a)].")

Before the court are:  (1) IBEW's motion to dismiss, or in the alternative for summary judgment (MSJ (Dkt. # 18)), and (2) the parties' trial briefs (Plf. Tr. Br. (Dkt. # 24); Def. Tr. Br. (Dkt. # 23)).  The court has reviewed the parties' briefing, the administrative record on file (*see* AR (Dkt. # 17), and the applicable law.  Being fully advised,[1] the court GRANTS in part and DENIES in part IBEW's motion and RESOLVES the issues raised in the parties' trial briefs, under the procedures, standards, and analysis described below, by upholding IBEW's decision to reduce Ms. Richardson's monthly pension benefit but reversing IBEW's decision to recoup its alleged overpayment from Ms. Richardson.

## II.   BACKGROUND

Ms. Richardson filed this ERISA action on May 22, 2019, following IBEW's denial of her pension benefit administrative appeal in 2017.  (*See generally* Compl.)  Ms. Richardson's allegations arise from her status as an alternate payee under the Plan, which

---

[1] In their joint proposed case schedule, the parties state that they intend that the March 16, 2020, trial date "will be for oral argument only, following briefing on parties' motions."  (Joint Prop. Sched. (Dkt. # 14) at 1.)  The parties have extensively briefed the issues herein, and the court does not consider oral argument to be helpful to its disposition of the issues.  Accordingly, the court denies the parties' request for oral argument.  *See* Local Rules W.D. Wash. LCR 7(b)(4).

1    is an ERISA employee benefit pension plan.  (*See* AR at 8, 14 ("Teresa Richardson is the

2    alternate payee for Participant Warren Richardson under [IBEW] Pacific Coast Pension

3    Fund."), 441.)[2]

4         Ms. Richardson and non-party Warren Richardson divorced in October 2001.  (*Id.*

5    at 14.)  Pursuant to a Qualified Domestic Relations Order ("QDRO"), Ms. Richardson

6    was awarded 100% of the pension benefits credited to Mr. Richardson, as a participant in

7    the Plan from November 1974 to March 1996.  (*Id.*)  In 2006, Ms. Richardson applied for

8    her pension and received her first check in May 2006, in the amount of $2,071.50.  (*Id.*)

9    The Plan provides an actuarial reduction to a participant's or an alternate payee's gross

10   monthly benefit should the participant or alternate payee initiate benefit payments prior to

11   attaining regular retirement age as defined in the Plan.  (*Id.* at 189, 208-09 (including

12   sections 3.05 and 7.06 of the Plan).)  Because Ms. Richardson initiated her pension

13   benefits before attaining regular retirement age and prior to Mr. Richardson's retirement,

14   IBEW reduced her gross monthly benefit at the time she began receiving her benefits

15   based on these Plan provisions.  (*See id.*)

16        Ms. Richardson trusted IBEW when it told her that her $2,071.50 monthly pension

17   payment was accurate.  (*Id.* at 30.)  Because Ms. Richardson struggles with a disability,

18   she ceased employment as a receptionist in 2008 "in reliance o[n] her retirement

19   benefits."  (*See* Compl. ¶ 2.9.)  In 2011, the Social Security Administration determined

20   that Ms. Richardson is 100% disabled.  (AR at 28.)  Accordingly, she also receives Social

21

22        [2] All citations to the administrative record will refer to the page number generated by the
     court's electronic filing system.

Security disability payments.  (*Id*.)  The monthly pension benefit that Ms. Richardson receives from IBEW and her social security disability payments are her only sources of income.  (*Id*.)

In a letter dated June 20, 2017, IBEW notified Ms. Richardson that the Plan had conducted an audit and recalculated her monthly pension benefit and reduced it from $2,071.50 to $1,103.73.  (*Id.* at 15; 450-51.)  Ms. Richardson began receiving this lower monthly amount in August 2017.  (*Id.* at 15, 444.)  Based on this recalculation, IBEW also notified Ms. Richardson that it had overpaid her by $967.77 per month from May 2006 through July 2017, for a total overpayment of $130,648.95.  (*Id.* at 15, 450.)  In its June 20, 2017, letter, IBEW also demanded that Ms. Richardson repay, in full, its $130,648.95 overpayment.  (*Id.* at 450.)  Due to her disability, Ms. Richardson does not have the ability to generate extra income.  (AR at 30.)  Accordingly, the Plan's reduction in her pension benefits is a hardship.  (*Id.*)

IBEW's review of Ms. Richardson's QDRO arose as part of an August 22, 2016, audit of QDROs.  (*Id.* at 37.)  Ms. Richardson's QDRO awards her a 100% share of the community accrual.  (*Id.* at 38.)  At the time Ms. Richardson filed her application for pension benefits, the Plan was providing heavily subsidized early retirement benefits to Plan Participants, which were funded solely through employer contributions.  (*Id.* at 443.)  Part 4(a) of Ms. Richardson's QDRO states that the benefits are to be calculated in the form of an annuity under the Joint and Survivor provisions of the Plan or, if applicable, under Internal Revenue Code ("IRC") 414(p)(4)(A)(ii) based upon the ages of the Alternate Payee (Ms. Richardson) and the Participant (Mr. Richardson) for 100% of the

1    value of the benefits credited to the Participant for the period from November 1974

2    through March 1996.  (AR at 443; *see also* Plf. Resp. to Def. Tr. Br. (Dkt. # 27) at 13.)

3           IRC 414(p)(4)(A)(ii) provides, in pertinent part:

4           A domestic relations order shall not be treated as failing to meet the
            requirements of subparagraph (A) of paragraph (3) solely because such order
5           requires that payment of benefits be made to an alternate payee-- . . . as if the
            participant had retired on the date on which such payment is to begin under
6           such order (but taking into account only the present value of the benefits
            actually accrued and not taking into account the present value of any
7           employer subsidy for early retirement) . . . .

8    26 U.S.C. § 414(p)(4)(A)(ii).  In turn, IRC 414(p)(3)(A) states:

9           A domestic relations order meets the requirements of this paragraph only if
            such order-- . . . (A) does not require a plan to provide any type or form of
10          benefit, or any option, not otherwise provided under the plan,

11   26 U.S.C. § 414(p)(3)(A).

12          During the QDRO audit, IBEW's actuary concluded that the prior Plan

13   Administrator miscalculated the benefits payable to Ms. Richardson by failing to consider

14   the forgoing provisions of the IRC and Ms. Richardson's QDRO and by failing to submit

15   the calculation to an actuary for a calculation to remove the value of the employer

16   subsidy that inhered in the Plan's early retirement benefits.  (AR at 38, 443-44.)  The

17   actuary calculated that Ms. Richardson's pension benefit at her annuity starting date—

18   disregarding the employer subsidy for early retirement and considering only the present

19   value of benefits actually accrued—should have been a monthly award of $1,103.73, and

20   not $2,071.50 as the prior Plan Administrator had calculated.  (*Id.* at 443-44.)

21          On October 17, 2017, Ms. Richardson submitted an appeal to IBEW's Board of

22   Trustees challenging IBEW's decision to (1) reduce her monthly pension benefit and (2)

1    demand repayment of the alleged $130,648.95 overpayment.  (*Id.* at 13-20.)  Ms.

2    Richardson did not submit an alternate actuarial calculation for her benefits challenging

3    IBEW's actuarial analysis of her benefits in the QDRO audit.  (*See id.*)  In a letter dated

4    December 12, 2017, IBEW's Board of Trustees notified Ms. Richardson that it denied her

5    appeal.  (*Id.* at 2; *see also id.* at 4-11 (attaching minutes of the Board of Trustees'

6    November 16, 2017, meeting, during which the Board considered and denied Ms.

7    Richardson's appeal).)

8           Ms. Richardson filed her present action against IBEW on May 22, 2019.  (*See*

9    Compl.)  On September 17, 2019, the parties submitted a joint proposed case schedule in

10   which the parties represented that the case consists of a "review of the administrative

11   record only."  (Joint Prop. Sched. at 1.)  On November 15, 2019, IBEW filed a motion to

12   dismiss or, in the alternative, for summary judgment.  (*See* MSJ.)  IBEW's motion is

13   fully briefed.  (*See* SJ Resp. (Dkt. # 20); SJ Reply (Dkt. # 22).)  In addition, on January

14   31, 2020, IBEW filed a trial brief (*see* Def. Tr. Br.), and on February 3, 2020, Ms.

15   Richardson filed a trial brief (*see* Plf. Tr. Br.).  The court ordered the parties to file

16   responsive memoranda to each other's trial briefs, and they have done so.  (Plf. Resp. to

17   Def. Tr. Br. (Dkt. # 27); Def. Resp. to Plf. Tr. Br. (Dkt. # 26).)  The issues presented in

18   IBEW's motion and the parties' trial briefs and responses are largely overlapping.  The

19   court now considers all the issues presented by IBEW's motion and the parties' briefing

20   pursuant to the standards, procedures, and analysis described below.

21   //

22   //

ORDER - 6

# III.   ANALYSIS

## A.    Legal Standards and Procedures

ERISA provides that any "participant" or "beneficiary" may bring a civil action in federal court.  *See* 29 U.S.C. § 1132(a); *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008).  ERISA "confers beneficiary status on a nonparticipant spouse or dependent in only narrow circumstances delineated by its provisions."  *Boggs v. Boggs*, 520 U.S. 833, 846 (1997).  One such provision is a QDRO, "a type of domestic relations order that creates or recognizes an alternate payee's right to, or assigns to an alternate payee the right to, a portion of the benefits payable with respect to a participant under a plan."  *Id.* (citing 29 U.S.C. § 1056(d)(3)(B)(i)).  A QDRO must not require a plan to provide any benefit or option, not otherwise provided under the plan, and must not require the plan to provide increased benefits (determined based on actuarial value).  29 U.S.C. § 1056(d)(3)(D)(i)-(ii).  "In creating the QDRO mechanism Congress was careful to provide that the alternate payee, the 'spouse, former spouse, child, or other dependent of a participant,' is to be considered a plan beneficiary."  *Boggs*, 520 U.S. at 847 (citing 29 U.S.C. §§ 1056(d)(3)(K), (J)).  There is no dispute that Ms. Richardson is an alternate payee under the QDRO at issue here (*see* Def. Tr. Br. at 2; Plf. Tr. Br. at 1), and the court concludes that she is entitled to bring this suit under ERISA.[3]

//

//

---

[3] In its motion, IBEW argues that Ms. Richardson failed to adequately allege a claim under the civil enforcement provisions of ERISA, 29 U.S.C. § 1132(a).  (MSJ at 4-6.)  The court has reviewed Ms. Richardson's complaint and DENIES this portion of IBEW's motion.

1    The court reviews an ERISA benefit determination *de novo*, "unless the benefit

2    plan gives the administrator or fiduciary discretionary authority to determine eligibility

3    for benefits or to construe the terms of the plan," in which case the court reviews the

4    ERISA benefit determination under an abuse of discretion standard.  *Firestone Tire &*

5    *Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *see also Stephan v. Unum Life Ins. Co. of*

6    *Am.*, 697 F.3d 917, 923-24 (9th Cir. 2012).  Here, IBEW asserts that the Plan grants the

7    Board of Trustees discretionary authority to determine eligibility for benefits or to

8    construe the Plan's terms.  (*See* Def. Tr. Br. at 4-5; MSJ at 8.)  Ms. Richardson does not

9    dispute this assertion.  (*See generally* SJ Resp.; Plf. Resp. to Def. Tr. Br.)  Indeed, the

10   Plan states that the Trustees shall "be the sole judges of the standard of proof required in

11   any case and the application and interpretation of this Plan, and the decisions of the

12   Trustees shall be final and binding on all parties."  (AR at 78, 218.)  This language is

13   sufficient to confer discretionary authority on the Trustees.  *See Abatie v. Alta Health &*

14   *Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006) (stating that the Ninth Circuit has

15   "repeatedly held that similar plan wording—granting the power to interpret plan terms

16   and to make final benefits determinations—confers discretion on the plan

17   administrator"); *see also Grosz-Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154,

18   1159 (9th Cir. 2001) (holding that a plan providing that the administrator "has the full,

19   final, conclusive and binding power to construe and interpret the policy under the

20   plan . . . [and] to make claims determinations" grants discretion (internal quotation marks

21   omitted)).  Accordingly, the court applies an abuse of discretion standard to its review.

22   *//*

1    IBEW has filed a motion for summary judgment and the parties have also filed

2    opposing "trial briefs."  (*See* MSJ; Def. Tr. Br.; Plf. Tr. Br.)  Where review is *de novo*,

3    Federal Rule of Civil Procedure 52 is the appropriate mechanism for resolving ERISA

4    disputes.  *See Todd R. v. Premera Blue Cross Blue Shield of Alaska*, No. C17-1041JLR,

5    2019 WL 366225, at *2 (W.D. Wash. Jan. 30, 2019), *reconsideration denied*, No.

6    C17-1041JLR, 2019 WL 1923034 (W.D. Wash. Apr. 30, 2019) ("[W]hen applying a *de*

7    *novo* standard in an ERISA benefits case, a trial on the administrative record under Rule

8    52, which permits the court to make factual findings, evaluate credibility, and weigh

9    evidence, is a more appropriate vehicle for resolving the parties' dispute.").  However,

10   where review is for abuse of discretion, the Ninth Circuit provides that Federal Rule of

11   Civil Procedure 56 is the appropriate "conduit to bring the legal question before the

12   district court."  *Harlick v. Blue Shield of Cal.*, 686 F.3d 699, 706 (9th Cir. 2009) (citing

13   *Nolan v. Heald College*, 551 F.3d 1148, 1154 (9th Cir. 2009)); *see also Bartholomew v.*

14   *Unum Life Ins. Co.*, 588 F. Supp. 2d 1262, 1265-66 (W.D. Wash. 2008) ("The

15   administrative record submitted in conjunction with [the] litigation exists as a body of

16   undisputed facts," although "the conclusions to be drawn from those facts are definitely

17   in dispute.").  Thus, the court will resolve the dispute under Rule 56 and will construe the

18   arguments in the parties' trial briefs as cross motions under Rule 56.  Nevertheless, the

19   court recognizes that, in this context, Rule 56 is merely the vehicle for bringing the issues

20   before the court and the "the usual tests of summary judgment, such as whether a genuine

21   dispute of material fact exists, do not apply."  *Stephan*, 697 F.3d at 930 (citing *Nolan*,

22   551 F.3d at 1154).

ORDER - 9

## B.     Materials the Court Considers

Ms. Richardson attempts to supplement the administrative record with her submissions to the court.  (*See* Compl. Exs. (Dkt. #1-3); Richardson Decl. (Dkt. # 19); SJ Resp. Exs. (Dkt. ## 20-1, 20-2).)  IBEW argues that Ms. Richardson may not supplement the administrative record and asks the court to strike these additional materials.  (Def. Tr. Br. at 6-7.)  Unlike ERISA cases a court reviews *de novo*, "in general, a district court may review only the administrative record when considering whether the plan administrator abused its discretion."  *Abatie*, 458 F.3d at 970.  Nevertheless, the Ninth Circuit liberally permits discovery concerning inquiries "designed to obtain 'evidence of malice, of self-dealing, or of a parsimonious claims-granting history.'"  *Santos v. Quebecor World Long Term Disability Plan*, 254 F.R.D. 643, 648 (E.D. Cal. 2009) (quoting *Abati*e, 458 F.3d at 968); *see also Welch v. Metro. Life Ins. Co*., 480 F.3d 942, 949-50 (9th Cir. 2007) (holding that an ERISA plaintiff may conduct discovery in order to show a conflict of interest).  Based on Ms. Richardson's allegations and arguments, the court cannot discern a reason to depart from the general rule that its final decision shall be on the administrative record as it stands.

Moreover, Ms. Richardson repeatedly represented to the court that this case consisted of a "review of the administrative record," and that there would "be no discovery or submittal of any evidence, other than the administrative record."  (JSR (Dkt. # 11) at 1; *see id.* at 2 ("[T]his case is limited to a review of the administrative record and whether the Trustees acted in an arbitrary and capricious manner in their denial of [Ms. Richardson's] appeal."); OSC Resp. (Dkt. #13) ("[T]he March 16, 2020 'trial' date is

1   anticipated to be for oral argument only on the administrative record before the Court,

2   and there will not be presentation of testimony or other additional evidence beyond the

3   administrative record."); Joint Prop. Sched. at 1 ("This matter is [a] . . . review of the

4   administrative record, and there will be no discovery or submittal of any evidence, other

5   than the administrative record.").)  In submitting additional evidence to the court, Ms.

6   Richardson fails to address her myriad contrary representations to the court.  Having

7   made these repeated representations, the court is disinclined to allow Ms. Richardson to

8   submit additional evidence in contravention thereto.  Accordingly, the court considers

9   only the administrative record on file herein (*see* AR), and strikes all of Ms. Richardson's

10  supplemental materials.

11  **C.      IBEW's Reduction in Ms. Richardson's Monthly Pension Benefits**

12          "ERISA's civil enforcement provision, 29 U.S.C. § 1132(a) . . . , creates an

13  exclusive remedial scheme."  *Lea v. Republic Airlines, Inc.*, 903 F.2d 624, 631 (9th Cir.

14  1990); *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 953 (9th Cir. 2014) ("The

15  civil enforcement provisions of ERISA, codified in § 1132(a), are 'the exclusive vehicle

16  for actions by ERISA-plan participants and beneficiaries asserting improper processing of

17  a claim for benefits.'") (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 52 (1987)).

18  The issue is not whether ERISA "bars a particular cause of action, but rather 'whether the

19  statute affirmatively *authorizes* such a suit.'"  *Id.* at 954 (quoting *Mertens v. Hewitt*

20  *Assocs.*, 508 U.S. 248, 255 n.5 (1993)).

21          Based on Ms. Richardson's allegations and the arguments in her briefing, 29

22  U.S.C. § 1132(a) provides Ms. Richardson with two potential bases for recovery of her

1   original and higher monthly pension benefit from IBEW.  First, § 1132(a)(1)(B) provides

2   that Ms. Richardson may bring a civil action "to recover benefits due to [her] under the

3   terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her]

4   rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).

5   Second, § 1132(a)(3) provides that Ms. Richardson may bring a civil action "to obtain

6   other appropriate equitable relief" to redress violations or enforce provisions of ERISA or

7   the Plan.  29 U.S.C. § 1132(a)(3)(B).  The court will consider each claim in turn.

8       **1.  29 U.S.C. § 1132(a)(1)(B)**

9           As noted above, the court considers Ms. Richardson's claim under 29

10   U.S.C. § 1132(a)(1)(B) and IBEW's decision to reduce Ms. Richardson's monthly

11   pension benefit under an abuse of discretion standard.  *See supra* § III.A.; *Bruch*, 489

12   U.S. at 109.  The court's review of the administrative record reveals no abuse of

13   discretion in the Trustees' decision to reduce Ms. Richardson's monthly pension benefit.

14   IBEW discovered the error in Ms. Richardson's monthly benefit as part of a sample taken

15   pursuant to an audit of QDROs dated August 22, 2016.  (AR at 37.)  The auditor's

16   calculations of Ms. Richardson's pension benefit were based on provisions of the Plan in

17   effect on the relevant dates and other information provided by IBEW, including Mr.

18   Richardson's birth date, Ms. Richardson's birth date, their marriage date, their separation

19   date according the QDRO, Ms. Richardson's normal retirement age, Mr. Richardson's

20   normal retirement date ("NRD"), Mr. Richardson's unadjusted accrued monthly benefit

21   on his NRD, the 100% QDRO awarded to Ms. Richardson, and the annuity starting date

22   for Ms. Richardson.  (*Id.*)  As noted above, when IBEW initially calculated Ms.

1    Richardson's pension award in 2006 at $2,071.50 per month, IBEW did not submit the

2    calculation to an actuary to remove the employer subsidy that inhered in the Plan's early

3    retirement factors at that time.  (*Id.* at 38.)  When the auditor recalculated Ms.

4    Richardson's pension award in 2016, he excluded the value of this employer subsidy in

5    accordance with IRC 414(p)(3)(B) and 414(p)(4)(A)(ii).  (*See* AR at 38); *see also* 26

6    U.S.C. §§ 414(p)(3)(A), 414(p)(4)(A)(ii).  As a part of her appeal, Ms. Richardson

7    requested, and the actuary provided, a detailed description of his recalculation of her

8    pension benefit.  (*See* AR at 37-39.)

9         Although Ms. Richardson argued in her appeal to the Trustees that IBEW should

10   return to its original, higher calculation, she did not submit her own opposing actuarial

11   analysis, present evidence that contradicted the auditor's recalculation, or otherwise

12   demonstrate that the recalculation was in error or an abuse of discretion.  (*See* AR at 15.)

13   Thus, there is nothing in the administrative record to demonstrate that IBEW's Trustees

14   abused their discretion by reducing Ms. Richardson's monthly pension benefit.  The court

15   must "accept the [Trustees'] interpretation unless it is 'not grounded on any reasonable

16   basis.'"  *O'Rourke v. N. Cal. Elec. Workers Pension Plan*, 934 F.3d 993, 1000 (9th Cir.

17   2019) (quoting Richardson v. Pension Plan of Bethlehem Steel Corp., 112 F.3d 982, 985

18   (9th Cir. 1997)).  Indeed, "[t]he Trustees' interpretation need not be the one this court

19   would have reached, but only an interpretation which has rational justifications."  *Tapley*

20   *v. Locals 302 & 612 of Int'l Union of Operating Eng'rs-Emp'rs Const. Indus. Ret. Plan*,

21   728 F.3d 1134, 1139-40 (9th Cir. 2013).  Accordingly, the court GRANTS IBEW's

22   motion for summary judgment on this claim and DENIES this portion of Ms.

1  Richardson's trial brief, which the court construes as a cross motion for summary

2  judgment.

3      **2.  29 U.S.C. § 1132(a)(3)(B)**

4      Nevertheless, Ms. Richardson argues that she is entitled to her original, higher

5  payment based on equitable estoppel.  (*See* SJ Resp. at 10; Plf. Tr. Br. at 10; Plf. Resp. to

6  Def. Tr. Br. at 16-17.)  The Ninth Circuit recognizes that "appropriate equitable relief"

7  under 29 U.S.C. § 1132(a)(3) "may include the remedy of equitable estoppel, which

8  holds the fiduciary to what it had promised and operates to place the person entitled to its

9  benefit in the same position he would have been in had the representations been true."

10 *Gabriel*, 773 F.3d at 955.  However, in addition to the traditional elements of estoppel, a

11 plan participant asserting an ERISA estoppel claim must also show (1) extraordinary

12 circumstances, (2) that the provisions of the plan are ambiguous such that reasonable

13 persons could disagree as to their meaning, and (3) that the representations about the plan

14 were an interpretation of the plan and not an amendment or modification of the plan.  *Id.*

15 at 957.  In *Gabriel*, the Ninth Circuit held that a plan representative's "mere mistake in

16 assessing . . . entitlement to benefits" under a pension plan is not "an interpretation of

17 ambiguous language in the Plan," and therefore does not support an ERISA estoppel

18 claim.  *Id.* at 959.  Here, Ms. Richardson has not demonstrated that the Plan contains a

19 relevant ambiguity.  Rather, the administrative record demonstrates a "mere mistake in

20 assessing [her] . . . entitlement to benefits."  *See id.*  Accordingly, the court concludes that

21 she cannot maintain a claim for equitable relief concerning IBEW's recalculation of her

22 monthly pension benefits.  Thus, the court GRANTS IBEW's motion for summary

1   judgment as it relates to Ms. Richardson's equitable claim for a restoration of her higher

2   monthly pension benefits and DENIES the corresponding portion of Ms. Richardson's

3   trial brief, which the court construes as a cross motion for summary judgment.

4   **D.    IBEW's Recoupment of Its Overpayment to Ms. Richardson**

5          The issue that remains is whether Ms. Richardson must repay IBEW for the

6   $130,648.95 in overpayments that IBEW sent to her over the course of more than 11

7   years.  In its June 20, 2017, letter to Ms. Richardson, IBEW demanded repayment, in full.

8   (AR at 450.)  In her administrative appeal, Ms. Richardson asked the Trustees to waive or

9   reverse their decision to seek recoupment of the overpayment.  (*Id.* at 16-19.)  In its

10  briefing, IBEW admits that Ms. Richardson is correct "that pursuit of an overpayment . . .

11  is not mandatory."  (Def. Resp. to Plf. Tr. Br. (Dkt. # 26) at 13.)  Nevertheless, IBEW

12  argues that the action is discretionary and that it has a fiduciary obligation "to recover

13  erroneous payments made from a plan."  (*Id.* (quoting U.S. Dep't of Labor, Advisory Op.

14  77-08 at 2 (Apr. 4, 1977)).)

15         Here, although the Plan expressly permits the Trustees to recoup overpayments

16  under some circumstances, those circumstances do not include where the overpayment is

17  due entirely to IBEW's mistake.  Specifically, the Plan provides:

18         The Trustees shall have the right to recover any benefit payments made (1)
           in reliance on any willfully made false or fraudulent statement, information
19         or proof submitted by a Participant or Pensioner, or (2) prior to the receipt of
           any required notifications.
20
21  (AR at 78, 218.)  There is no evidence in the administrative record to support any

22  wrongdoing on Ms. Richardson's part that induced IBEW's overpayment.  Indeed, the

1  overpayment was entirely IBEW's error.  *See supra* § II.  Further, even if the plan

2  unambiguously provides a plan fiduciary with the right to recoup an overpayment,

3  "'equitable principles may limit an ERISA fiduciary's legal right' to so do."  *Knapp v.*

4  *Sedwick CMS*, No. 3:11-cv-393, 2013 WL 26051, at *3 (S.D. Ohio Jan. 2, 2013) (quoting

5  *Butler v. Aetna U.S. Healthcare, Inc*., 109 F. Supp. 2d 856, 862 (S.D. Ohio 2000)).

6       "ERISA does not specifically address the ability of plans to recoup."  *Phillips v.*

7  *Mar. Assoc.—I.L.A. Local Pension Plan*, 194 F. Supp. 2d 549, 555 (E.D. Tex. 2001).

8  However, the Supreme Court directs federal courts to create a body of common law "to

9  fill in the gaps of ERISA."  *Id.* (citing *Dedeaux*, 481 U.S. at 56; *Bruch*, 489 U.S. at

10  110-11)).  "When a plan does not specifically allow for recoupment, but nevertheless [the

11  plan] does so, it exercises extra-statutory devices to do so."  *Id.*  Thus, when IBEW

12  demanded that Ms. Richardson repay the $130,648.95 overpayment, IBEW—not Ms.

13  Richardson—availed itself of the common law remedy of restitution.  *See id.*; *see also*

14  *Dandurand v. Unum Life Ins. Co. of Am*., 150 F. Supp. 2d 178, 184 (D. Me. 2001)  ("By

15  recouping the overpayment, [the administrator] has availed itself of the equitable remedy

16  of restitution.").  The focus of the court's analysis, therefore, must be on whether IBEW

17  is entitled to rely on this doctrine.  *See Phillips*, 194 F. Supp. 2d at 555.  As the court

18  explains below, considerations of the equities in this case and ERISA's guiding

19  principles, lead the court to conclude that IBEW is not entitled to avail itself of this

20  equitable remedy under the specific factual circumstances of this case.

21       Courts have considered a variety of factors to determine if equitable principles bar

22  recovery of mistaken overpayments to an ERISA plan beneficiary, including (1) the

1    amount of time which has passed since the overpayment was made; (2) the effect that

2    recoupment would have on that income; (3) the nature of the mistake by the

3    administrator; (4) the amount of the overpayment; (5) the beneficiary's total income; and

4    (6) the beneficiary's use of the money at issue.  *Knapp*, 2013 WL 26051, at *4 (citing

5    *Wells v. U.S. Steel & Carnegie Pension Fund, Inc.*, 950 F.2d 1244, 1251 (6th Cir. 1991));

6    *see also Bocchino v. Trs. of Dist. Council of Ironworkers of N. N.J.*, No. Civ.A. 07-864

7    PGS, 2008 WL 1844298, at *6 (D.N.J. Apr. 23, 2008) ("Factors pertinent to review

8    include (1) what disposition the beneficiary has made of the overpayment; (2) the

9    overpayment amount; (3) the nature of the trustees' mistake, e.g. negligence; and (4) the

10   time lapsed since the overpayment was made."); *Kwatcher v. Mass. Serv. Emps. Pension

11   Fund*, 879 F.2d 957, 967 (1st Cir. 1989), *abrogated on other grounds by Raymond B.

12   Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1 (2004) ("The trial court

13   should consider whatever factors it may reasonably believe shed light on the fairness of

14   reimbursement, and weigh those factors against the backdrop of general equitable

15   considerations and the guiding principles and purposes of ERISA.").

16          Here, the balance of the equities does not favor allowing IBEW to recoup its past

17   overpayments to Ms. Richardson.  First, the overpayments occurred over a period of

18   more than eleven years.  (*See* AR at 38 ("[Ms. Richardson] has been receiving $2,071.50

19   per month since May 1, 2006 . . . .").)  The length of time that IBEW permitted the error

20   to continue weighs against permitting any recoupment.  Ms. Richardson did not know

21   that she was being overpaid, and she relied on IBEW when it told her that its distributions

22   to her were accurate.  (*See id.* at 30.)  Second, the amount of the overpayment also

1  weighs against recoupment.  This consideration is tied to the first because the amount of

2  overpayment grew so large entirely due to IBEW's failure to discover its error for more

3  than 11 years.  Ms. Richardson is disabled and lives on a limited, fixed income.  (*See id.*

4  at 28-30.)  She does not have the ability to repay such a large sum, which IBEW all but

5  admits.  (*See id.*; *see also* Def. Resp. to Plf. Tr. Br. at 13 ("[I]t is unclear if [Ms.

6  Richardson would be able to repay any of the overpaid benefits . . . .").)  Finally, the

7  overpayment occurred due to no fault on Ms. Richardson's part.  *See supra* § II.  Rather,

8  the overpayments were solely the result of IBEW's error.  *See id.*  Indeed, the

9  overpayments were more than IBEW's mere mistake; IBEW breached its fiduciary duty

10  when it failed to consult an actuary when initially calculating Ms. Richardson's monthly

11  pension benefit.  (*See* AR at 38 ("In 2006, when [Ms. Richardson] began receiving her

12  benefits, the Administrator at that time did not refer the matter to an actuary . . . .")); *see*

13  *also Phillips*, 194 F. Supp. 2d at 557 ("There is no restitution in this matter because of the

14  blatant breach of fiduciary duty.  The initial breach was [the administrator's] failure to

15  seek an actuary when calculating the Plaintiff's monthly payment amounts.").  Finally,

16  there is no evidence in the administrative record that disallowing IBEW to engage in

17  restitution will put the corpus of the Plan's funds in jeopardy for IBEW's participants or

18  beneficiaries.[4]  (*See generally* AR.)

19  //

20  //

21

22

---

[4] Indeed, IBEW asserts that Ms. Richardson's contention that the Plan was experiencing severe hardship is "irrelevant," "unfounded supposition," "false," "and should be stricken." (Def. Resp. to Plf. Tr. Br. at 8.)

1    The foregoing considerations combine to weigh against allowing IBEW to invoke

2    the equitable doctrine of restitution or recoup the $130,648.95 overpayment from Ms..[5]

3    Accordingly, the court DENIES IBEW's motion for summary judgment concerning

4    recoupment of its overpayment from Ms. Richardson, and GRANTS the corresponding

5    portion of Ms. Richardson's trial brief, which the court construes as a cross motion for

6    summary judgment.

7    **E.    Attorney's Fees**

8    Ms. Richardson seeks an award of attorney's fees.  (*See* Plf. Tr. Br. at 19 ("[Ms.

9    Richardson] request[s] reasonable attorney fees be awarded."); *see also* SJ Resp. at 19.)

10   IBEW also requests an award of fees.  (*See* Def. Resp. to Plf. Tr. Br. at 14-15.)  However,

11   IBEW did not request fees until it filed its response to Ms. Richardson's trial brief.  (*See*

12   *id.*)  Thus, Ms. Richardson has not had an opportunity to respond to IBEW's argument

13   for an award of fees in its favor.

14   ERISA provides that "the court in its discretion may allow a reasonable attorney's

15   fee and costs of action to either party."  29 U.S.C. § 1132(g)(1).  "[A] fees claimant must

16   show 'some degree of success on the merits' before a court may award attorney's fees

17   under § 1132(g)(1)."  *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010)

18   //

---

[5] The court's ruling does not prohibit IBEW from attempting to recoup its overpayment
from a source other than Ms. Richardson.  *See, e.g.*, *Phillips*, 194 F. Supp. 2d at 557 ("[I]n
denying the recoupment efforts by the Plan as to the Plaintiffs, this court has not necessarily
precluded the Plan from recovery.  The Plan may seek recovery on behalf of its beneficiaries
from [the Administrator who committed the error], the Board, or other trustees that may be found
liable to the Plan.  Disallowing the Plan to recoup from Plaintiffs because of [the
Administrator's] blatant breach of fiduciary duty does not leave the Plan without remedy.").

1   (quoting *Ruckelshaus v. Sierra Clu*b, 463 U.S. 680, 694 (1983)).  Once the fees claimant

2   establishes this threshold requirement, the court must determine whether the five factors

3   from *Hummell v. S.E. Rykoff & C*o., 634 F.2d 446 (9th Cir. 1980), weigh in favor of

4   awarding the claimant's attorney's fees.  *Simonia v. Glendale Nissan/Infiniti Dis. Plan*,

5   608 F.3d 1118, 1119, 1121 (9th Cir. 2010) ("[A]fter determining a litigant has achieved

6   some degree of success on the merits [under *Hardt*], district courts must still consider the

7   *Hummell* factors before exercising their discretion to award fees under § 1132(g)(1).").

8   The *Hummell* factors are:  (1) the degree of the opposing party's culpability or bad faith;

9   (2) the ability of the opposing party to satisfy an award of fees; (3) whether an award of

10   fees against the opposing party would deter others from acting under similar

11   circumstances; (4) whether the party requesting fees sought to benefit all participants and

12   beneficiaries of an ERISA plan or to resolve a significant legal question regarding

13   ERISA; and (5) the relative merits of the parties' positions.  *Hummell*, 634 F.2d at 453.

14       Here, both parties achieved the threshold requirement of attaining "some degree of

15   success on the merits."  *See Hardt*, 560 U.S. at 255.  IBEW succeed on the issue of

16   reducing Ms. Richardson's monthly pension benefit to the correct calculation, *see supra*

17   §§ III.C.1, 2, and Ms. Richardson prevailed on the issue of recoupment of the

18   overpayment, *see supra* § III.D.  The court concludes, however, that application of the

19   *Hummel* factors favors an award of fees to Ms. Richardson but not to IBEW.

20       The first *Hummel* factor—the degree of the opposing party's culpability or bad

21   faith—favors an award to Ms. Richardson.  The court has previously discussed the

22   distinction between the terms "culpability" and "bad faith."  *See Todd R.*, 2019 WL

1923034, at *5 (citing *Pease v. Hartford Life & Accident Ins. Co.*, 449 F.3d 435, 450 (2d

Cir. 2006) & *McPherson v. Emp'rs' Pension Plan of Am. Re-Ins. Co.*, 33 F.3d 253, 257

(3d Cir. 1994)); *see also Flaaen v. Principal Life Ins. Co.*, No. C15-5899 BHS, 2017 WL

6527144, at *2 (W.D. Wash. Dec. 21, 2017), *appeal dismissed sub nom. Flaaen v.*

*McLane Co., Inc.*, No. 17-35969, 2018 WL 1941322 (9th Cir. Mar. 14, 2018)

(recognizing a distinction between "bad faith" and "culpability").  Although "bad faith

normally connotes an ulterior motive or sinister purpose, . . . [a] losing party may be

culpable . . . without having acted with an ulterior motive." *McPherson*, 33 F.3d at 256.

"[C]ulpable conduct" is "commonly understood" to mean "blameable," "censurable," or

"at fault." *Id.* at 257 (citing Black's Law Dictionary (6th ed. 1990)).  It "normally

involves something more than simple negligence" and "implies that the act or conduct

spoken of is reprehensible or wrong, but [does] not . . . involve[ ] malice or a guilty

purpose." *Id.*  Although the court finds no Ninth Circuit authority on this point, the court

finds the foregoing authority persuasive.

          As described above, IBEW's conduct here was more than merely negligent.

IBEW's failure to refer its initial calculation of Ms. Richardson's pension benefits to an

actuary for a calculation to remove the employer subsidy that inhered in the Plan's early

retirement factors amounted to a breach of its fiduciary duties.  *See supra* § III.D; *see*

*also Phillips*, 194 F. Supp. 2d at 557.  On the other hand, nothing in the administrative

record supports any culpability or bad faith on Ms. Richardson's part.  Accordingly, this

factor supports an award of fees to Ms. Richardson and not to IBEW.

*//*

1       The second *Hummel* factor is "the ability of the opposing part[y] to satisfy an

2   award of fees."  634 F.2d at 453.  The administrative record demonstrates that Ms.

3   Richardson, who is disabled and on a limited and fixed income, has no ability to pay an

4   award of fees.  (*See* AR at 28-30.)  There is no evidence concerning IBEW's ability to

5   pay a fee award in the record.  (*See generally id.*)  Thus, at most, this factor weighs

6   against an award of fees to IBEW and is neutral with respect to an award of fees to Ms.

7   Richardson.

8       The third *Hummell* factor is "whether an award of fees against the opposing

9   part[y] would deter others from acting under similar circumstances."  634 F.2d at 453.

10  Here, there is no conduct on the part of Ms. Richardson to deter since the court has found

11  that she engaged in no culpable conduct with respect to IBEW's overpayment of her

12  pension benefits.  *See supra* § III.D.  On the other hand, an award of fees against IBEW

13  may serve to deter it from failing to seek actuarial advice in similar circumstances in the

14  future.  Accordingly, the court concludes that this factor favors an award of fees to Ms.

15  Richardson and disfavors and award to IBEW.

16      The fourth *Hummell* factor is whether the party requesting fees sought to benefit

17  all Plan participants and beneficiaries or to resolve a significant legal question regarding

18  ERISA.  *Hummel*l, 634 F.2d at 453.  Ms. Richardson did not seek relief for any other

19  Plan member.  (*See gener*ally Compl.; SJ Resp.; Plf. Tr. Br.)  Further, the court decided

20  her petition on its facts.  IBEW's efforts, on the other hand, to eliminate its overpayment

21  of pension benefits to Ms. Richardson benefit the Plan by preserving the corpus of the

22  //

1   Plan's funds for legitimate pension payments.  Thus, the court concludes that this factor

2   weighs in favor of an award of fees to IBEW but not to Ms. Richardson.

3        The final *Hummell* factor is the relative merits of the parties' positions.  634 F.2d

4   at 453.  The court concludes that this factor is neutral because each side prevailed with

5   respect to a significant issue.  *See supra* §§ III.C., D.

6        Under the *Hummell* factors, the court concludes that Ms. Richardson is entitled to

7   an award of attorney's fees and IBEW is not.  Two of the factors weigh in favor of an

8   award to Ms. Richardson, one weighs against, and two are neutral. On the other hand,

9   only one factor weighs in favor of an award to IBEW, three weigh against, and one is

10  neutral.  On balance, the *Hummel* factors support an award of attorney's fees to Ms.

11  Richardson and not to IBEW.  Therefore, the court GRANTS Ms. Richardson's request

12  for an award of attorney's fees and costs pursuant to 29 U.S.C. § 1132(g)(1).

13       "The party seeking fees bears the burden of documenting the hours expended in

14  the litigation and must submit evidence supporting those hours and the rates claimed."

15  *Welch*, 480 F.3d at 945-46 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

16  Accordingly, the court orders Ms. Richardson to file a motion detailing the reasonable

17  attorney's fees she has incurred in this litigation within 14 days of the filing date of this

18  order.[6]  IBEW will have the opportunity to respond to Ms. Richardson's motion pursuant

19  to the court's local rules.  *See generally* Local Rules W.D. Wash. LCR 7.

20

21       _____

         [6] In determining the reasonable amount of fees to award, the court uses a hybrid
         lodestar/multiplier approach.  *McElwaine v. US West, Inc*., 176 F.3d 1167, 1173 (9th Cir. 1999).

22       The court arrives at the "lodestar" figure by multiplying the number of hours reasonably
         expended by a reasonable hourly rate.  *Id*.  Additionally, "in rare and exceptional cases, the

## IV.   CONCLUSION

Based on the foregoing analysis, the court GRANTS in part and DENIES in part IBEW's motion to dismiss, or in the alternative for summary judgment (Dkt. # 18) and GRANTS in part and DENIES in part the parties' trial briefs (Dkt. ## 23, 24), which the court construes as cross motions for summary judgment.  Specifically, the court GRANTS IBEW's motion for summary judgment on Ms. Richardson's claim that the Board of Trustees abused their discretion in denying her appeal for reinstatement of her prior monthly pension benefit or that she is entitled to reinstatement of her prior monthly pension benefits on grounds of equitable estoppel, and DENIES Ms. Richardson's cross motion on these same issues.  In addition, the court GRANTS Ms. Richardson's motion for summary judgment that IBEW is not entitled to recoupment or restitution of its $130,648.95 overpayment, and DENIES IBEW's cross motion on this same issue. Finally, the court GRANTS Ms. Richardson's request for an award of attorney's fees and ORDERS her to file a motion detailing the reasonable attorney's fees and costs that she incurred in this litigation within 14 days of the filing date of this order.

Dated this 6th day of July, 2020.

JAMES L. ROBART
United States District Judge

---

district court may adjust the lodestar upward or downward using a multiplier based on facts not subsumed in the initial lodestar calculation."  Welch, 480 F.3d at 946.